IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
IN ADMIRALTY
No. 4:15-CV-153-D

| | |
|---|---|
| ALBERT G. VANDERMEER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| M/V CHARAZZ (EX-SIP'N'TIME ) | |
| NC 7055 DF) (HIN#RPGUSA13A900), ) | |
| her boats, tackle, apparel, furniture, ) | |
| engines, fishing history and permits, and ) | |
| appurtenances, etc., in rem, ) | |
| ) | |
| and ) | |
| ) | |
| GRAND SLAM YACHT & BOAT SALES ) | |
| LLC; WILTON CARLYLE GAY; and ) | |
| JAMES ALLEN HINDS, in Personam, ) | |
| ) | |
| Defendants. ) | |

Albert G. Vandermeer ("Vandermeer" or "plaintiff") seeks to recover damages for personal injuries he sustained in a boating accident. See Am. Compl. [D.E. 7]. On October 2, 2016, Wilton Carlyle Gay ("Gay" or "defendant") moved for summary judgment [D.E. 58–60]. On October 26, 2016, Vandermeer responded in opposition [D.E. 68–72]. On November 9, 2016, Gay replied [D.E. 76]. As explained below, the court denies Gay's motion for summary judgment.

I.

On February 2, 2013, a boating accident occurred in the Bogue Sound Area of the Atlantic Intercoastal Waterway in Carteret County, North Carolina. See Am. Compl. [D.E. 7] ¶ 17; Answer [D.E. 38] ¶ 17. At the time, M/V SIP'N'TIME (later M/V CHARAZZ) ("the vessel") was undergoing a sea-trial to ensure that all systems were operational as a routine part of the sale of the

vessel to a new owner. Am. Compl. ¶ 20; Answer ¶ 20. The buyer, Dale Rasmussen ("Rasmussen"), hired Vandermeer, a marine surveyor, to conduct a survey of the vessel and, in particular, to inspect recent repairs to the engine. Am. Compl. ¶ 13; Answer ¶ 13. Gay owned the vessel and retained defendants Grand Slam Yacht and Boat Sales, LLC ("Grand Slam") and James Hinds ("Hinds") to broker the sale. Am. Compl. ¶¶ 8–9; Answer ¶¶ 8–9.

Hinds's daughter, Lois Hinds Brooks ("Brooks"), owns and operates Grand Slam. Brooks Dep. 9:1 [D.E. 72-1] 3. According to Brooks, she is the sole owner, manager, and operator of Grand Slam, and never employed Hinds. Brooks Dep. 10:2–4, 9:1 [D.E. 72-1] 3. According to Hinds, he is an independent subcontractor who acted through his own corporation, Tale Dancer Charters (d/b/a Just Add Water Boat Sales). Hinds Dep. 16:2–5 [D.E. 66-1] 2. Gay did not know the details of the relationship between Grand Slam and Hinds, but believed that Hinds was a Grand Slam employee at all relevant times. See Gay Dep. 12:19–25 [D.E. 72-2] 3.

On February 2, 2013, Vandermeer, Hinds, Rasmussen, and another unidentified individual, [D.E. 72-2] 6, were onboard the vessel conducting a pre-purchase sea-trial. Am. Compl. ¶¶ 17, 20. Two prior sea-trials had been conducted, during which Vandermeer noticed fiberglass delamination and engine problems. See Vandermeer Dep. 38:3–10 [D.E. 72-3] 10. On February 2, 2013, the parties undertook another sea-trial to ensure that the repairs had been completed correctly. [D.E. 59] ¶ 14; [D.E. 69] ¶ 14. During this sea-trial, Vandermeer wanted to test the engines at a high RPM to determine if they would operate properly under those conditions without overheating or losing oil pressure. See Vandermeer Dep. 62:5–24 [D.E. 72-3] 16. Gay was not available to operate the vessel during the sea-trial. Thus, pursuant to Brooks's request, Gay authorized Hinds to operate the vessel for the sea-trial. [D.E. 71-1]; Gay Dep. 31–32 [D.E. 72-2] 8.

Hinds navigated the vessel by steering in a zig-zag manner between the markers denoting the

2

channel. Vandermeer Dep. 56:8–22 [D.E. 72-3] 14. Over the course of approximately thirty minutes, Vandermeer observed the relevant instruments and successfully completed his survey. Id. 57:19 [D.E. 72-3] 15. Shortly thereafter, the boat ran hard aground,[1] decelerating from a speed between 30 and 35 knots to stopped within a matter of seconds. Id. 58:21–25 [D.E. 72-3] 15.[2]

During the grounding, Vandermeer fell down the companionway into the vessel's main cabin and sustained injuries to his "head, shoulder, arm, back[,] and other body parts." Am. Compl. ¶¶ 32–33. Vandermeer "experienced immediate excruciating pain, light-headedness, physical impairments[,] and numbness." Id. ¶ 34. Vandermeer was "diagnosed with numerous permanent physical injuries, including, . . . 7 broken vertebrae, . . . a broken shoulder, [and] breaks of multiple spinous processes." Id. ¶ 40. Vandermeer also has undergone "serious and life-altering surgeries for fusion of his L4-L5 spinal bodies, shoulder surgery, and other procedures." Id. ¶ 41.

II.

The parties dispute whether to apply North Carolina law or federal admiralty law. Gay contends that North Carolina's common law of negligence, not federal admiralty law, applies because: (1) Vandermeer pled "a traditional state court cause of action" by alleging negligence in the complaint, [D.E. 76] 2; see Am. Compl. ¶¶ 43–46; and (2) Vandermeer never asserted a negligence claim against Gay as owner of the vessel. See [D.E. 76] 2.

Generally, a federal court hearing a tort claim will apply the substantive tort law of the state where the federal court sits. See, e.g., Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). However,

---

[1] A hard grounding describes a grounding where the vessel is unable to release itself under its own power, and requires a tow boat or some external force to free the vessel. A soft grounding is one in which the vessel can free itself through use of its own engines, a "kedging" maneuver, or through use of wind, waves, or tide. See Grounding, Boat U.S. Foundation, http://www.boatus.org/study-guide/prep/aground/.

[2] A knot is approximately 1.15 miles per hour.

3

recovery for a "tort committed on navigable water, whether brought under federal admiralty jurisdiction, in state court under the saving-to-suitors clause, or in federal court under diversity jurisdiction, [is] governed by admiralty law." Byrd v. Byrd, 657 F.2d 615, 617 (4th Cir. 1981); see Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 628 (1959). Federal courts decide admiralty cases under admiralty jurisdiction, according to the substantive law of admiralty. See E. River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864 (1986); Kermarec, 358 U.S. at 628; Md. Dep't of Nat. Res. v. Kellum, 51 F.3d 1220, 1223 (4th Cir. 1995). When sitting in admiralty, a federal court may supplement federal admiralty law with state law where there is no directly applicable admiralty law. See Ost-West-Handel Bruno Bischoff GmbH v. Project Asia Line, Inc., 160 F.3d 170, 174 (4th Cir. 1998); Byrd, 657 F.2d at 617.

Vandermeer's amended complaint identifies this case as an action "under the Admiralty and Maritime Law of the United States." Am. Compl. ¶ 1. It also references Federal Rule of Civil Procedure 9(h), which deals exclusively with admiralty and maritime claims, and 28 U.S.C. § 1333 and 46 U.S.C. § 30103 et seq., which are admiralty statutes. See id. Furthermore, the amended complaint alleges that Vandermeer and all defendants are citizens of North Carolina, which destroys complete diversity under 28 U.S.C. § 1332. Id. ¶¶ 2–5. The amended complaint then discusses the facts (id. ¶¶ 16–42) and raises a single cause of action—negligence—against all defendants. See id. ¶¶ 43–46. The amended complaint does not reference North Carolina law. Having reviewed the record and governing law, the court concludes that federal admiralty law applies.

As for Gay's argument that Vandermeer cannot hold Gay liable for his alleged negligence as owner of the vessel because Vandermeer did not explicitly raise this legal theory in the amended complaint, the court rejects the argument. Generally, parties may not use summary judgment as a vehicle for asserting new claims not contained in the complaint. See, e.g., Gilbert v. Deutsche Bank

Tr. Co. Ams., No. 4:09-CV-181-D, 2017 WL 1012981, at *2 n.2 (E.D.N.C. Mar. 14, 2017) (unpublished); Hexion Specialty Chems., Inc. v. Oak-Bark Corp., No. 7:09-CV-105-D, 2011 WL 4527382, at *7 (E.D.N.C. Sept. 28, 2011) (unpublished) (collecting cases). The pleading requirements under the federal rules and relevant cases require a short and plain statement of the claim showing that the pleader is entitled to relief and giving the defendant adequate notice of the nature of the claims against him. See Fed. R. Civ. P. 8(a), 9(h); Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam); Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). To survive a motion to dismiss, a plaintiff must allege facts sufficient to plausibly allege a claim for relief, but need not assert a legal theory. See Johnson v. City of Shelby, 135 S. Ct. 346, 346 (2014) (per curiam); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1215 (3d ed. 2017); 2-8 James Wm. Moore et al., Moore's Federal Practice - Civil § 8.04 (2017); see also Hanson v. Hoffman, 628 F.2d 42, 53 (D.C. Cir. 1980); Hostrop v. Bd. of Jr. College Dist. No. 515, Cook & Will Ctys. & State of Ill., 523 F.2d 569, 581 (7th Cir. 1975); Nagler v. Admiral Corp., 248 F.2d 319, 325 n.9 (2d Cir. 1957). Twombly and Iqbal "concern the factual allegations a complaint must contain," but do not require that plaintiffs assert a legal theory for relief. See City of Shelby, 135 S.Ct. at 347. In fact, when assessing a complaint's sufficiency, courts do not look to the legal conclusions in the complaint. See, e.g., Iqbal, 556 U.S. at 677–79. Likewise, plaintiffs need not use "any precise or magical words in [their] pleading[s]" or proper legal-theory headings to state a claim for relief under Rule 8(a). See King v. Rubenstein, 825 F.3d 206, 222 (4th Cir. 2016) (quotation omitted).

Notice pleading requires that a complaint put a defendant on notice of the claims against him. Sometimes where a plaintiff does plead a legal theory, recovery on a different legal theory is barred if the defendant had no notice of the different theory. See Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 91 (1st Cir. 2014) (holding that pleading a state statutory action did not give notice of common-law fraud claim); Marie v. Am. Red Cross, 771 F.3d 344, 365 (6th Cir. 2014) (holding that pleading Title VII and 42 U.S.C. § 1983 claims did not give notice of a claim under Bivens). Gay invokes this line of cases and argues that Vandermeer's amended complaint alleges only a direct negligence claim, and not a negligence claim against Gay as the owner of the vessel. See [D.E. 76] 2.

Vandermeer was not obligated to plead a specific legal theory, and the court rejects Gay's argument that Vandermeer may not recover against him for negligence as owner of the vessel.[3] Vandermeer's amended complaint provides sufficient notice to Gay about the nature of the negligence action against him and the relief Vandermeer seeks. See Am. Compl. ¶¶ 43–46. Gay had the opportunity to use the discovery tools available in the Federal Rules of Civil Procedure to obtain the details of why and how Vandermeer contends that he was negligent. Thus, the court rejects Gay's argument that the amended complaint bars Vandermeer from pursuing a negligence claim against Gay as the owner of the vessel.

III.

Summary judgment is appropriate when, after reviewing the record as a whole, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R.

---

[3] Admiralty precedent recognizes that a shipowner owes a duty of reasonable care towards those individuals lawfully aboard the vessel who are not members of the crew. See, e.g., Fed. Marine Terminals, Inc. v. Burnside Shipping Co., 394 U.S. 404, 415–17 (1969); Kermarec, 358 U.S. at 630; The Steamboat New World v. King, 57 U.S. 469, 474–75 (1854); Bubla v. Bradshaw, 795 F.2d 349, 353 (4th Cir. 1986).

Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

In the introductory paragraph of Vandermeer's response to Gay's motion for summary judgment, Vandermeer states that defendants' liability is so clear "under bedrock principles of admiralty law" that "summary judgment should be entered in favor of Plaintiff pursuant to [Rule] 56(f)(1)." [D.E. 68] 1. Vandermeer also supplements his statement of material facts under Local Rule 56.1(a)(2) with additional facts concerning liability. [D.E. 69] 11.

To the extent Vandermeer seriously requests partial summary judgment, the court denies the request. The Federal Rules of Civil Procedure "govern the procedure in all civil actions and proceedings in the United States district courts." Fed. R. Civ. P. 1. These rules govern the types of pleadings, motions, and other papers that may be submitted to the court for review. Under these rules, "a request for a court order must be made by motion." Fed. R. Civ. P. 7(b)(1). Vandermeer's memorandum is not a motion, and the court denies his request for partial summary judgment. Moreover, even if Vandermeer made a proper motion, genuine issues of material fact preclude

7

summary judgment for Vandermeer.

As for Gay's motion for summary judgment, genuine issues of material fact exist on numerous issues concerning Gay's alleged negligence. These issue include (1) the nature of the relationship between Hinds and Gay; (2) the precise location and circumstances of the grounding; (3) whether Gay is liable as the vessel's owner; and (4) whether Hinds was a pilot. Thus, the court denies Gay's motion for summary judgment.

IV.

In sum, the court DENIES Gay's motion for summary judgment [D.E. 58].

SO ORDERED. This **25** day of September 2017.

JAMES C. DEVER III
Chief United States District Judge

8